IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LEE BOYD MALVO** | * | |
| | * | |
| Petitioner | * | |
| | * | |
| v. | * | Civil No.  **PJM 13-1863** |
| | * | |
| **RANDALL MATHENA, CHIEF WARDEN** | * | |
| **RED ONION STATE PRISON** | * | |
| | * | |
| **and** | * | |
| | * | |
| **BRIAN FROSH,** | * | |
| **as ATTORNEY GENERAL FOR** | * | |
| **THE STATE OF MARYLAND** | * | |
| | * | |
| Respondents | * | |

## MEMORANDUM OPINION

Lee Boyd Malvo has filed a petition pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus against Randall Mathena, Chief Warden of the Red Onion State Prison in Pound, Virginia (where Malvo is presently confined), and Brian Frosh, Esquire, Attorney General for the State of Maryland.[1] Malvo seeks to modify the six consecutive terms of life imprisonment without the possibility of parole he was sentenced to in 2006 in the Circuit Court of Montgomery County, Maryland, following guilty pleas on six counts charging murder in the first degree.

On January 13, 2017, Malvo filed a Motion for Stay (ECF No. 18) in this Court, asking it to stay and hold in abeyance the § 2254 Petition. He argues that a stay is proper because on January 12, 2017, he filed a Motion to Correct Illegal Sentence challenging the legality of his

---

[1] This case was originally docketed as *Malvo v. Mathena and Gansler*. Douglas F. Gansler served as Attorney General for the State of Maryland until January 6, 2015 when Brian Frosh was sworn into that office. As indicated in the Order filed herewith, Brian Frosh will be substituted for Douglas Gansler as co-Respondent.

sentences in Maryland State Court based on the Supreme Court's decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

Defendants have filed an opposition to the Motion to Stay (ECF No. 21), effectively arguing that the Court should deny Malvo's Motion and dismiss the § 2254 Petition because the claim he raises has not yet been exhausted in state court.[2]

The Court will **GRANT** Malvo's Motion for Stay (ECF No. 18) and **DENY** Defendants' Motion to Dismiss (ECF No. 21).

## I. FACTS AND PROCEDURAL HISTORY

### A.  Malvo's Crimes and Sentences

Over the course of several weeks in October 2002, Malvo and John Allen Muhammad, who became known as the "D.C. Snipers," shot 13 people, killing 10.  *See Muhammad v. State*, 177 Md. App. 188 (2007).[3] Malvo was 17 years old at the time of the killings, Muhammad was 41. *See id*. at 217. The shootings took place in Maryland, Virginia, and the District of Columbia. *See generally id.*

Muhammad was convicted of capital murder in Virginia in 2003 and was executed in 2009. *Muhammad v. Commonwealth*, 269 Va. 451, 619 S.E.2d 16 (2005).

---

[2]  Although not specifically styled as a motion to dismiss, the Court will treat Defendants' opposition to the Motion to Stay as a Motion to Dismiss.

[3] The Court of Special Appeals of Maryland described the episode as follows:

> For 22 days in October of 2002, Montgomery County, Maryland, was gripped by a paroxysm of fear, a fear as paralyzing as that which froze the London district of Whitechapel in 1888. In Whitechapel, however, the terror came only at night. In Montgomery County, it struck at any hour of the night or day. In Whitechapel, all of the victims were prostitutes. In Montgomery County, every man, woman, and child was a likely target. The body count in Whitechapel was five; in Montgomery County the death toll reached six. The name of the Whitechapel terrorist has never been discovered. In Montgomery County, their names are John Allen Muhammad and Lee Boyd Malvo.

*Muhammad*, 934 A.2d at 1065.

In December 2003, Malvo was convicted in Virginia of two counts: murder in the commission of an act of terrorism and murder of more than one person in a three year period. *See Malvo v. Mathena*, 2014 WL 2808805, at *3 (E.D. Va. June 20, 2014). He was sentenced to two terms of life imprisonment without parole plus eight years. *Id.* Malvo did not appeal his judgment of conviction in the Virginia courts. *Id.*

On October 10, 2006, in the Circuit Court for Montgomery County, Maryland, Malvo pled guilty to six counts of first degree murder, and on November 8, 2006, he was sentenced to six terms of life imprisonment without the possibility of parole, to be served consecutively. Am. Pet. ¶¶ 1-2, ECF No. 8; Defs.' Lim. Ans., Ex. 1, ECF No. 10-1. Malvo did not appeal his Maryland conviction to the Maryland appellate courts. Am. Pet. ¶ 3; Defs.' Lim. Ans., Ex. 1. On November 27, 2006, however, he did file a motion for modification of sentence in the Montgomery County Circuit Court, which the court initially held in abeyance, and eventually denied on September 18, 2012. Defs.' Lim. Ans., Ex. 1.

Malvo is presently incarcerated in the Commonwealth of Virginia. Am. Pet. ¶ 8.

On June 25, 2012, the U.S. Supreme Court decided *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment to the U.S. Constitution generally prohibits the imposition of mandatory life without parole sentences for juveniles. In consequence, Malvo filed separate § 2254 petitions in Virginia and Maryland federal courts, seeking to modify his Virginia and Maryland sentences respectively, on the ground that his life without parole sentences are unconstitutional in light of *Miller.* The § 2254 petition of his Virginia convictions (hereinafter the "Virginia Petition") was filed in the Eastern District of Virginia (2:13-cv-00375 and 2:13-cv-00376). The § 2254 petition of his Maryland convictions (hereinafter the "Petition" or "Maryland Petition") is before this Court.

**B. Malvo's Virginia Petition**

In June 2014, the Eastern District of Virginia denied Malvo's Virginia Petition. *Malvo v. Mathena*, 2014 WL 2859153, at *2 (E.D. Va. June 23, 2014). The court held that *Miller* did not apply retroactively, and thus dismissed with prejudice Malvo's Virginia Petition as time-barred. Malvo appealed to the Fourth Circuit, No. 14-7069. *Id.*

Throughout 2014 and 2015, the Fourth Circuit issued a series of stays delaying the briefing schedule in the appeal of the Virginia Petition. Fourth Circuit, No. 14-7069, Docs. 6, 26. One of these stays related to the Supreme Court's grant of a petition for *writ of certiorari* in *Montgomery v. Louisiana*, No.14-280, in March 2015, Fourth Circuit, No. 14-7069, Doc. 26, which raised the issue of whether *Miller* was retroactive.

On January 25, 2016, the Supreme Court issued its judgment in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), holding in a 6-3 decision that *Miller's* prohibition on mandatory life without parole for juvenile offenders announced a new substantive rule that, under the Constitution, was indeed retroactive and could be raised by affected individuals on collateral review.[4]

On April 6, 2016, Defendant Mathena moved the Fourth Circuit to remand the Virginia Petition to the Eastern District of Virginia for reconsideration in light of *Miller* and *Montgomery*. Fourth Circuit, No. 14-7069, Doc. 33. In fact, he requested that the Fourth Circuit remand to the district court for a full merits analysis, without limitation as to the scope of the merits arguments which the parties might present. *Id*. On May 20, 2016, the Fourth Circuit granted Mathena's Motion to Remand, directing the Eastern District of Virginia to further consider the Virginia Petition in light of *Montgomery*. Fourth Circuit, No. 14-7069, Doc. 39. The Fourth Circuit's

---

[4] The decision was not limited to cases on collateral review at the time of the decision, but to all cases where a juvenile had been sentenced to a mandatory life term without parole, even if final.

4

mandate was issued on June 13, 2016, so that the Virginia Petition is currently pending before the Eastern District of Virginia. Fourth Circuit, No. 14-7069, Doc. 41.[5]

## C. Malvo's Maryland Petition

On June 25, 2013, Malvo filed his Maryland Petition for Writ of Habeas Corpus in this Court. ECF No. 1. The Petition named Mathena as the sole defendant. Mathena responded (ECF No. 4), alleging that the Attorney General of Maryland was the proper party defendant in the case, such that on August 19, 2013 Malvo filed an Amended Petition (ECF No. 8) adding then-Maryland Attorney General Douglas F. Gansler as a defendant.[6] The Petition requests that the Court vacate the allegedly unconstitutional sentences imposed by the Montgomery County Circuit Court. Malvo challenges the without-parole component of his sentences based on the Supreme Court's holding in *Miller*. Defendants filed a limited answer (ECF No. 10) on October 25, 2013.

In light of the Eastern District of Virginia's denial of the Virginia Petition and Malvo's appeal to the Fourth Circuit, this Court deferred ruling on the Maryland Petition until the Fourth Circuit could address Malvo's Virginia appeal. Following the Fourth Circuit's decision to remand Malvo's Virginia Petition to the Eastern District of Virginia for further consideration in light of *Montgomery*, this Court renewed its focus on the Maryland Petition. On October 31, 2016, the Court issued a Memorandum Order (ECF No. 13) stating that it deemed it appropriate to receive further briefing on Malvo's Petition and the parties' arguments in light of *Miller* and *Montgomery*.

---

[5] A hearing before Judge Raymond A. Jackson was held on April 5, 2017 to address Mathena's Motion to Dismiss Malvo's Virginia Petition.
[6] As noted above, Brian Frosh—the current Attorney General of Maryland—has been substituted as Co-Respondent.

On January 13, 2016, Malvo filed the pending Motion for Stay (ECF No. 18), asking the Court to stay and hold in abeyance the instant proceedings because on January 12, 2017, he filed a Motion to Correct an Illegal Sentence in the Circuit Court for Montgomery County. On February 22, 2017, Defendants responded (ECF No. 21), asserting that the Court should dismiss Malvo's Petition because he had yet to exhaust available state remedies with respect to the claim raised in his underlying petition. Malvo has not replied.

## II. ANALYSIS

It has long been held that "habeas petitioners must exhaust available state remedies before seeking relief in federal court." *Cone v. Bell*, 556 U.S. 449, 465 (2009). *See also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). When Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")—altering the rules for federal habeas corpus petitions—it preserved the "total exhaustion" requirement. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . .").

Plainly Malvo has not yet exhausted his state remedies.[7] However, in *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that "rather than dismiss [a] petition . . . , a district

---

[7] "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Malvo's judgment of conviction in Maryland became final for direct appeal purposes on December 8, 2006. *See* Md. Rule 8-204 (application for leave to appeal to be filed within 30 days of date of judgment from which appeal sought). Under Maryland Rule 4-345, a petitioner may challenge the legality of his current sentence by filing a motion to correct an illegal sentence in the circuit court, the denial of which may be appealed. *See* Md. Rule 4-345(a). Also under Maryland law, a petitioner may, within ten years of the date of sentencing, collaterally attack his convictions pursuant to the provisions of Maryland's Uniform Post Conviction Procedure Act. *See* Md. Code Ann., Crim. Pro. Art., §§ 7-101 et seq. (2008).

court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id*. at 275.[8] The Supreme Court did, however, caution that "stay and abeyance should be available only in limited circumstances." *Id*. at 277 ("[S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").[9]

### A. Malvo's Reliance on *Rhines*

Malvo argues that because he is presently challenging the legality of his multiple life sentences in Maryland state court, he should be allowed to exhaust his state court remedies

---

Prior to January 12, 2017, Malvo had not initiated a direct appeal, state post-conviction, or any other collateral proceeding with respect to the judgment at issue in his underlying case. Malvo makes no assertion to the contrary.

[8] The Supreme Court concluded that developing a stay and abeyance procedure was necessary in light of the interaction between the "total exhaustion" requirement and the AEDPA's one-year statute of limitations on the filing of federal petitions. *Rhines*, 544 U.S. at 274. "Although the limitations period is tolled during the pendency of a 'properly filed application for State post-conviction or other collateral review,' § 2244(d)(2), the filing of a petition for habeas corpus in federal court does not toll the statute of limitations." *Id*. at 274-75 (*quoting Duncan v. Walker*, 533 U.S. 167, 181 (2001)). With this in mind, the Supreme Court explained:

> As a result of the interplay between AEDPA 1-year statute of limitations and *Lundy's* dismissal requirement, petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review.

*Id*. at 275.

[9] The Court reasoned that if employed too frequently, a stay and abeyance could undermine the purposes of the AEDPA: (1) reducing delay in the execution of state and federal criminal sentences and (2) encouraging petitioners to seek relief from state courts in the first instance. *Id*. ("Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.").

before the Court rules on his Petition. He asserts that the Court should exercise its discretion to stay and hold the instant proceedings in abeyance pursuant to *Rhines*.

Defendants contend that Malvo's reliance on *Rhines* is misplaced. *Rhines*, they say, concerned the filing of "mixed" petitions, i.e., petitions that contain both exhausted and unexhausted claims. Malvo has not filed a mixed petition, but instead raises a single unexhausted claim. Defendants concede that the Supreme Court has suggested that the *Rhines'* stay and abeyance standard also applies to so-called "protective petitions," i.e., petitions containing no exhausted claims filed prior to the completion of the exhaustion process to ensure future federal review, *see Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). However, Defendants argue that *Pace* does not apply here because Malvo does not rely on that case as precedent.

### a. *Rhines* stay and abeyance procedure applies equally to unmixed petitions

Defendants rightly emphasize that *Rhines* dealt specifically with mixed petitions and that Malvo has not filed a mixed petition. However, multiple circuit courts—including the Fourth Circuit—have cited the Supreme Court's opinion in *Pace* as precedent for applying the *Rhines'* stay and abeyance procedure to unmixed petitions.

In *Pace*—an opinion published just one week after *Rhines*—the Supreme Court suggested in dicta that a petitioner reasonably confused about whether a state filing would be timely could file a "protective" petition in federal court. *Pace*, 544 U.S. at 416. The habeas petition in *Pace* was an unmixed petition. *Id.* at 410. Therefore, even though the Supreme Court did not explicitly state that the stay and abeyance procedure of *Rhines* applied to unmixed petitions, its suggestion that *Rhines'* stay and abeyance procedure could apply to an unmixed petition in that case clearly extended the *Rhines* rationale beyond mixed petitions.

This conclusion has been embraced by several federal circuits. In *Heleva v.* Brooks, 581 F.3d 187 (3d Cir. 2009), the Third Circuit relied on *Pace* to hold that the Supreme Court "sanctioned the use of the [*Rhines'*] stay-and-abeyance procedure in a context outside that of mixed petitions." *Id.* at 191. The Tenth Circuit reached the same conclusion. *See Doe v. Jones*, 762 F.3d 1174, 1179 (10th Cir. 2014) (holding that the rationale of *Rhines* was "potentially applicable to a petition with wholly unexhausted claims that is protectively filed during the pendency of state post-conviction proceedings"). As did the Seventh Circuit. *See Dolis v. Chambers*, 454 F.3d 721, 724-25 (7th Cir. 2006) (vacating the district court's dismissal without prejudice of the petitioner's wholly unexhausted habeas petition and remanding with instructions for the court to consider a stay of the federal court proceedings). Most recently, the Ninth Circuit distinguished ostensibly adverse precedent in holding that "[d]enying stays to all petitioners with fully unexhausted petitions, without regard to good cause excusing a failure to exhaust, creates a needlessly overbroad rule." *Mena v. Long*, 813 F.3d 907, 910-11 (9th Cir. 2016) ("[W]e do not find the distinctions between mixed petitions and fully unexhausted petitions sufficiently meaningful to warrant different treatment.").

The Fourth Circuit is in accord with its sister circuits. In *Hyman v.* Keller, it held that in *Pace*, the Supreme Court "subsequently extended the *Rhines* rationale beyond mixed § 2254 petitions." *Hyman v. Keller*, 2011 WL 3489092, at *10 (4th Cir. Aug. 10, 2011). "The stay and abeyance procedure was recommended by the *Pace* [c]ourt without any discussion of whether the habeas petitioner was pursuing a mixed § 2254 petition. To the contrary, the *Pace* decision appears to authorize use of the stay and abeyance procedure under any circumstances that could warrant a state court resolution of a prisoner's claims." *Id.* (*quoting Pace*, 544 U.S. at 416 and *citing Heleva*, 581 F.3d at 191–92). *See also Kulbicki v. Graham*,

2017 WL 262623, at *2 (D. Md. Jan. 20, 2017) (citing *Hyman*, *Pace*, and *Heleva* to support its conclusion that "[a] stay and abeyance may be used for a mixed petition **and where all potential claims are unexhausted**") (emphasis supplied).

In view of the foregoing, this Court concludes that, even where all claims in a petition are unexhausted in the state courts, a petitioner can still file a "protective federal habeas petition" while state court proceedings are pending.

### b. Malvo's Petition is a protective petition

Defendants seemingly argue that the Supreme Court's holding in *Pace* cannot apply to Malvo's Petition because he "does not rely on this precedent."

This is a most curious argument. A court should not apply a clearly applicable legal standard because a party has not cited it? But of course the law sensibly holds that a petitioner need not explicitly rely on a Supreme Court opinion in order for that precedent to apply to his or her claim. *See Lee v. Winston*, 717 F.2d 888, 895 (4th Cir. 1983), *aff'd,* 470 U.S. 753, (1985); *In re Allen*, 106 F.3d 582, 595 (4th Cir. 1997). So *Pace* is very much in play.

While the Supreme Court has not defined "protective petition," in *Pace* it described the purpose of a protective petition:

> [P]etitioner challenges the fairness of our interpretation. He claims that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,'" and thus that his federal habeas petition is time barred. A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.

*Id.* at 416. Malvo's Petition, when viewed in light of his Motion for Stay and his Motion to Correct Illegal Sentence in Maryland State Court, seeks to avoid the very concerns regarding timeliness expressed in *Pace*.

Ordinarily, the AEDPA's one-year limitation period begins to run from the date on which the state court judgment became final. *See* 28 U.S.C. § 2244(d)(1). However, the AEDPA allows for delayed commencement of the limitations period when the Supreme Court recognizes a new constitutional right. *Id.* In that case, the one-year statute of limitations on a § 2254 habeas petition begins on

> the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. . . .

28 U.S.C. § 2244(d)(1)(C). *See Dodd v. United States*, 545 U.S. 353, 357 (2005) (explaining that when § 2244(d)(1)(C) applies, the start date of the one-year period is the date that the Supreme Court initially recognizes the new constitutional right, not the date that that right is determined to apply retroactively).

In *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court declared that *Miller v. Alabama's*, 132 S. Ct. 2455 (2012), prohibition against mandatory life without parole for juvenile offenders announced a new substantive rule that, under the Constitution, was indeed retroactive and could be raised by effected individuals on collateral review. Pursuant to § 2244(d)(1)(C), the timeliness of Malvo's petition marks from June 25, 2012, when the Supreme Court decided *Miller*, i.e. when it initially recognized the Eighth Amendment violation, rather than from the date of its later declaration of retroactivity in *Montgomery*. *See Hauser v. Cain*, 2016 WL 4703974, at *4 (W.D. La. July 18, 2016), *report and recommendation adopted*, 2016 WL 4703509 (W.D. La. Sept. 6, 2016); *Crockett v. Cain*, 2016 WL 7717434, at *4 (E.D. La. Dec. 1, 2016), *report and recommendation adopted*, 2017 WL 111180 (E.D. La. Jan. 11, 2017); *Young v. Biter*, 2016 WL 4775465, at *3 (C.D. Cal. July 8, 2016), *report and recommendation*

*adopted*, 2016 WL 4770027 (C.D. Cal. Sept. 12, 2016). The the one-year statute of limitations on Malvo's § 2254 petition began to run on June 25, 2012.

Malvo filed his Petition in this Court on June 25, 2013.[10] In other words, the Petition was filed on the final permissible day, 365 days into the 365 day limitations period. The filing of a petition for habeas corpus in federal court does not toll the statute of limitations under the AEDPA. *Duncan v. Walker*, 533 U.S. 167, 181 (2001). Malvo might have sought state court review—which would have tolled the limitations period, but he did not do so. Therefore, the limitations period applicable to his claim expired on June 26, 2013. That said, his filing was timely.

But if Malvo's Petition is dismissed now, any future attempt to file a petition for habeas corpus in federal court could well be deemed untimely. That is what makes his request for a stay compelling. Similar concerns regarding timeliness and the expiration of the AEDPA's one-year statute of limitations have been recognized as legitimate reasons for the filing of a "protective petition." *See Pace*, 544 U.S. at 416; *Doe v. Jones*, 762 F.3d at 1180-81; *Heleva*, 581 F.3d at 192. In fact, Malvo faces the very hazard that led the Supreme Court to prescribe the stay and abeyance procedure in *Rhines*. *Id.* at 275 ("As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy's* dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, **this will**

---

[10] Although Malvo filed an *Amended* Petition on August 25, 2013, Federal Rule of Civil Procedure Rule 15(c) provides that "pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Mayle v. Felix*, 545 U.S. 644, 656 (2005). Because Malvo's Amended Complaint merely added the Attorney General of Maryland as a Respondent without inserting any new claims, the "common core of operative facts" remained the same, and relation back is proper. *Id.*

**likely mean the termination of any federal review**.") (emphasis supplied). As contemplated in *Rhines*, "dismissing [Malvo's] petition would unreasonably impair [his] right to obtain federal relief." *Id.* at 278.

In sum, the stay and abeyance procedure of *Rhines* could apply to Malvo's Petition if it presents one of those "limited circumstances" in which stay and abeyance should be available.

### B. Application of the *Rhines*' Test to Malvo's Petition

Pursuant to *Rhines*, a petitioner must satisfy three requirements to justify a stay. *Rhines*, 544 U.S. at 277-78.[11] First, the petitioner must present good cause for his or her failure to exhaust. *Id.* Second, the petition must not be plainly meritless. *Id*. Third, there must be no indication that petitioner engaged in intentionally dilatory litigation tactics. *Id*. The Court finds that Malvo satisfies each of the three elements.

First, there exists good cause for Malvo's failure to exhaust.

In *Rhines*, the Supreme Court did not articulate what reasons constitute "good cause" to excuse a petitioner's failure to exhaust. *See Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014). That is, apart from *Pace*—in which the Supreme Court recognized in dicta that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" *Pace* 544 U.S. at 416 (2005)—the Supreme Court has not addressed the meaning of "good cause" since *Rhines*. *Id*.[12] Nor has the Fourth Circuit spoken to the issue.

To determine what "good cause" means, some inferior courts have looked to the cause and prejudice standard applicable to claims seeking to be excepted from state procedural bar

---

[11] The Supreme Court summarized its holding by stating, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

[12] "The Supreme Court's limited comments on what constitutes good cause to warrant stay and abeyance do not indicate that the standard is meant to be inordinately demanding." *Dick v. Fahey*, 2011 WL 2443898, at *3 (E.D. Va. June 14, 2011).

rules. *See, e.g., Larry v. Polk*, 412 F. Supp. 2d 542, 546 (M.D.N.C. 2005).[13] This requires that some "objective factor external to the defense" made it impossible to bring the claim earlier in the state court proceedings. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). *See also Polk*, 412 F. Supp. 2d at 546 ("[I]t is possible that the 'objective' factors of the cause and prejudice test . . . might be a basis for finding good cause for a stay and abeyance order."). Under this standard, "[o]bjective factors that may constitute 'cause' include: (1) 'interference by officials that makes compliance with the State's procedural rule impracticable,' (2) 'a showing that the factual or legal basis for a claim was not reasonably available to counsel,' (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel." *Wright v. Angelone*, 151 F.3d 151, 160 (4th Cir. 1998). Although, Malvo does not advance these arguments, the Court is satisfied that, in light of the recent Supreme Court holdings in *Miller* and *Montgomery*, he fulfills the second and third "objective factors."

Although Malvo's judgment of conviction became final for purposes of direct appeal in December 2006, *Miller* announced a new substantive rule prohibiting the imposition of mandatory life sentences without parole for juveniles in June 2012. Accordingly, the legal basis for Malvo's claim was not reasonably available until the Supreme Court's opinion in *Miller*. For the same reason, Malvo's claims related to the Eighth Amendment and *Miller* are unquestionably novel. Malvo, then, had good reason not to exhaust his state claims until at least June 2012. *See Patterson v. Woods*, 2015 WL 5461481, at *2 (E.D. Mich. Sept. 16, 2015) (concluding that petitioner has "shown good cause for failing previously to raise this claim because the Supreme Court's ruling in *Miller* was not available at the time of [p]etitioner's direct appeal"); *Mason v. Wetzel*, 2013 WL 5410830, at *3 (E.D. Pa. Sept. 24, 2013). *But see Winters v. Burns*, 2013 WL

---

[13] Other courts have held that *Rhines'* good cause standard requires a lesser showing than that for procedural default. *See, e.g., Riner v. Crawford*, 415 F. Supp. 2d 1207, 1210 (D. Nev. 2006).

5761314, at *2 (E.D. Pa. Oct. 21, 2013) ("Our understanding of the good cause assessment is that we are to determine not whether [petitioner] had good cause for failing to pursue his claim earlier, but whether he has good cause for failing to exhaust his state claim before bringing the instant *habeas* petition.").

Since June 2012, Malvo has actively and continuously litigated his Virginia Petition. In June 2014, the U.S. District Court for the Eastern District of Virginia dismissed his Virginia Petition with prejudice, holding that *Miller* did not apply retroactively. Then, for years, Malvo's appeal to the Fourth Circuit was stayed, in part because in March 2015, the Supreme Court granted certiorari in *Montgomery*, involving the retroactivity of *Miller*. From that time until January 2016—when the Supreme Court issued its opinion in *Montgomery*—Malvo understandably waited for the Supreme Court to address the retroactive effect of *Miller*, the issue on which his Maryland and Virginia Petitions, as well as any state proceedings, would turn. While it took Malvo nearly one year after *Montgomery* was decided to file his Motion to Correct Illegal Sentence in the Maryland state court, given that he has been primarily litigating his Virginia Petition, the Court finds that there was good cause for his failure to exhaust before filing his Maryland Petition.

Furthermore, as explained *supra*, if Malvo's Motion for Stay is denied and his Petition is dismissed, he may not be able to refile a habeas petition in federal court because the AEDPA's one-year statute of limitations has expired. *See Goodman v. Wetzel*, 2013 WL 6485557, at *2 (E.D. Pa. Dec. 9, 2013) (explaining why a petitioner might file a habeas petition while his state petition is pending). For example, in *Heleva*, the Third Circuit instructed the district court to consider the amount of time remaining in the one-year AEDPA limitations period in making its good cause determination. *Heleva*, 581 F.3d at 192–93. *See also Doe v. Jones*, 762 F.3d at 1179

("The court [in *Heleva*] likened this 'tight timeline' to 'the kind of reasonable confusion about state filing requirements that *Pace* categorized as 'good cause' for a stay.'"); *Melvin v. Harlow*, 2011 WL 1344591, at *10 (M.D. Pa. Mar. 16, 2011). Accordingly, because Malvo's premature filing of his federal habeas petition potentially solved the timeliness issues that might have otherwise plagued his opportunity for federal habeas review, there exists good cause for Malvo's failure to exhaust.

The Court is also convinced that Malvo's Petition raises a novel and potentially meritorious claim, the second consideration in the good cause analysis under *Rhines*. *C.f. Patterson*, 2015 WL 5461481, at *2 (holding that petitioner's claim based upon *Miller* was not "plainly meritless"); *McFadden v. Wetzel*, 2013 WL 5728707, at *2 (E.D. Pa. Oct. 22, 2013); *Goodman*, 2013 WL 6485557, at *3. Malvo was under the age of eighteen at the time he committed his crimes and received multiple consecutive life sentences without parole. At a minimum, it is arguable that six consecutive terms of life imprisonment without the possibility of parole violate the Eighth Amendment for the very same policy reasons discussed in *Miller*. Even though *Miller* specifically addressed the constitutionality of <u>mandatory</u> life without parole sentences, Malvo could still argue that the concerns expressed in *Miller* apply equally to juveniles given multiple <u>discretionary</u> life without parole sentences. In other words, any chance at rehabilitation—a cardinal objective of juvenile justice—is altogether foreclosed by such sentences. Alternatively, Malvo could argue that Maryland's sentencing history involving juveniles who commit homicides indisputably establishes that such sentences are <u>de facto</u> mandatory and that individualized consideration of the distinctive attributes of a given offender is always given short shrift. While Defendants, in their limited answer, have presented various

arguments that may, in the end, carry the day, none of them make Malvo's habeas petition plainly meritless.

Finally, there is no indication that Malvo has engaged in intentionally dilatory litigation tactics and Defendants have not alleged as much.

The Court will grant Malvo's Motion for Stay.

## C.  The Scope of the Stay

"Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the AEDPA. A mixed petition should not be stayed indefinitely." *Rhines*, 544 U.S. at 277. "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." *Id*. at 278.

In *Rhines*, the Supreme Court recommended "explicitly conditioning the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered . . ." *Id.* Here, because Malvo has already filed his Motion to Correct Illegal Sentence in Maryland, this concern need not be addressed. The Supreme Court also recommended that district courts explicitly condition the stay on the prisoner's "returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." *Id.* The Court is prepared to order just that.

Malvo is cautioned that his failure to promptly adjudicate his claims in state court may result in dismissal of his Petition in this Court. Further, Malvo must promptly notify this Court of any significant court decisions that may be issued in his case as it proceeds through the state courts.

## IV. CONCLUSION

For the foregoing reasons, Malvo's Motion for Stay (ECF No. 18) is **GRANTED** and Defendants' Motion to Dismiss (ECF No. 21) is **DENIED**. All proceedings in this matter are **STAYED** pending further order of the Court. Malvo **SHALL** provide a status report to the Court not more than 30 days after his state court remedies have been exhausted, or be subject to the possible dismissal of his Petition.

A separate Order will **ISSUE**.

**/s/**
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**April 11, 2017**